RECEIVED

2005 AUG 26  P 2: 31

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

**LONNIE LEWIS,**                                    )
                                                    )
~~U.S. DISTRICT~~ **Plaintiff,**                    )
                                                    )
**v.**                                              )        **CIVIL ACTION NO.: 2:05cv690-**☒ 丅
                                                    )
**FREIGHTLINER OF HOUSTON,**                        )
**INC.,**                                           )
                                                    )
            **Defendant.**                          )
                                                    )

## BRIEF OF DEFENDANT, HOUSTON FREIGHTLINER, INC., IN SUPPORT OF MOTION TO DISMISS, ALTERNATIVE MOTION TO TRANSFER VENUE, AND ALTERNATIVE MOTION TO STAY PROCEEDINGS AND COMPEL BINDING ARBITRATION

**COMES NOW**, Defendant, Houston Freightliner, Inc., incorrectly named in the complaint as Freightliner of Houston, Inc. (hereinafter referred to as "Houston Freightliner"), and pursuant to this Honorable Court's August 17, 2005, order, and files its brief in support of Motion to Dismiss (Doc. No. 4), Alternative Motion to Transfer Venue (Doc. No. 4), and Alternative Motion to Stay Proceedings and Compel Binding Arbitration (Doc. No. 5), heretofore filed in this cause as follows:

### I.

### FACTS

Plaintiff's complaint arises out of repairs to Plaintiff's Freightliner vehicle at Houston Freightliner in Houston, Texas, on or about February 13, 2005. <u>See</u>, Plaintiff's complaint at ¶ 5. A true and correct copy of the repair order dated February 13, 2005, and signed by Plaintiff, Lonnie Lewis, is attached as Exhibit "1" to the Affidavit of Roger S. Poser. <u>See</u>, Exhibit "1" to the Affidavit of Roger S. Poser. (Doc. No. 5). Plaintiff alleges that he is self-

employed as a semi-tractor trailer driver and that on February 13, 2005, he took his 1997 Freightliner truck to the Defendant for repairs.

Defendant, Houston Freightliner, Inc., (incorrectly named in the complaint as Freightliner of Houston, Inc.), is a Delaware corporation with its principal and sole place of business located in Houston, Texas. See, Affidavit of Roger S. Poser attached as Exhibit "A" to Alternative Motion to Stay Proceedings (Doc. No. 5). Houston Freightliner is not incorporated in the State of Alabama.[1]  Houston Freightliner has never contracted in Alabama to supply services or goods in the State of Alabama. Houston Freightliner does not advertise its goods or services in the State of Alabama or engage in any other activity of any nature whatsoever in the State of Alabama. Houston Freightliner, Inc. does not own any real or personal property located in the State of Alabama. Houston Freightliner, Inc. is not licensed in, or authorized to do business in the State of Alabama.  Houston Freightliner, Inc., does not solicit business or engage in any other persistent course of conduct or business in the State of Alabama. Houston Freightliner does not derive substantial revenue from goods used or consumed in the State of Alabama or from services rendered in the State of Alabama. See, affidavit of Roger Poser.

In Count I of his complaint Plaintiff alleges Defendant Houston Freightliner negligently performed the repairs to Plaintiff's Freightliner truck.  In Count II of his complaint Plaintiff alleges that Houston Freightliner breached its contract with the Plaintiff

---

[1] Copies of records pertaining to Houston Freightliner, Inc., received from the office of the Secretary of State of the State of Texas are attached as Exhibit "2" to the affidavit of Roger Poser filed with Defendant's alternative motion to stay proceedings. (Doc. 5). Exhibit "2" includes a copy of the certificate of authority issued to Houston Freightliner, Inc., by the Secretary of State of the State of Texas authorizing Houston Freightliner, Inc., to transact business in the State of Texas. Attached to the affidavit of Roger Poser as Exhibit "3" is a true and correct copy of the Certificate of Account Status -- Letter of Good Standing received by Houston Freightliner, Inc., from the Texas Comptroller of Public Accounts dated July 19, 2005, and certifying that Houston Freightliner, Inc., is in good standing with the Office of the Texas Comptroller of Public Accounts.

by failing to make necessary repairs in accordance with its agreement with the Plaintiff. In Count III of his complaint Plaintiff alleges in making repairs to the Plaintiff's vehicle, Defendant provided the Plaintiff with a warranty, either express or implied, of the work performed on his vehicle. Plaintiff alleges that Defendant breached the warranty when it failed to repair the Plaintiff's vehicle. In Count IV of his complaint Plaintiff alleges that Defendant Houston Freightliner represented to the Plaintiff that it would be responsible for the repairs to Plaintiff's vehicle.

According the records of Houston Freightliner, Lonnie Lewis signed the repair order (Exhibit "1")(Doc. No. 5). regarding the Freightliner vehicle, Serial No.: VL794813, on February 13, 2005. The repair order was executed by Lonnie Lewis as a condition and part of the transaction relating to the repair of the Freightliner vehicle, Serial No.: VL794813. The repair order includes a Mediation/Arbitration Agreement between the parties. The Mediation/Arbitration Agreement between Lonnie Lewis and Houston Freightliner states:

> The undersigned parties recognize and acknowledge that their relationship and business dealings and contracts involve interstate commerce and hereby submit all controversies, claims and matters of difference of any nature whatsoever (which are or may be directly or indirectly related to this repair Agreement in any manner whatsoever) to non-binding mediation and binding arbitration in Texas in accordance with the Federal Arbitration Act (9 USC 8 §§ 1-16) and pursuant to the Commercial/Business rules and procedures for mediation and arbitration Association. This submission and agreement to mediate and arbitrate shall be specifically enforceable. The parties hereto agree to submit all controversies to a one day mediation as a condition precedent to any arbitration proceeding. Arbitration may, thereafter, proceed in the absence of any party if written notice (pursuant to the American Arbitration Association's rules and regulations) of the proceedings has been given to such party. The parties agree to abide by all awards rendered in such arbitration proceedings. Such awards shall be final and binding on all

3

> parties to the extent and in the manner provided by the Federal
> Arbitration Act. All such awards may be filed with the Clerk of
> District Court in Harris County, Texas, as a basis for judgement
> and the issuance of execution for collection and, at the election
> of the party making such filing, with the clerk of one or more
> other court, state or federal, having jurisdiction of the party
> against whom such an award is rendered or his property.

See, Exhibit "1" to the affidavit of Roger Poser.

The arbitration agreement between Lonnie Lewis and Houston Freightliner acknowledges that the relationship and business dealings and contracts between the parties involve interstate commerce. See, id. The arbitration agreement further provides that the parties agree to submit all controversies, claims and matters of difference of any nature whatsoever to arbitration in Texas pursuant to the Federal Arbitration Act and the American Arbitration Association rules and regulations. Id.

The subject repair order and arbitration agreement was executed in Houston, Texas. All repairs to the subject vehicle by Defendant were performed in Houston, Texas. See, affidavit of Roger Poser at ¶8. All employees of Houston Freightliner reside in the State of Texas. Houston Freightliner has no agents or employees located in the State of Alabama. All witnesses Houston Freightliner expects to call at the trial of this action reside in the State of Texas. See, affidavit of Roger Poser.

The Freightliner vehicle which is the subject of the above-styled lawsuit was manufactured outside the State of Alabama and traveled in interstate commerce prior to the transaction between Houston Freightliner and Mr. Lonnie Lewis. The Freightliner vehicle was manufactured by Freightliner, LLC. Attached to the affidavit of Roger S. Poser as Exhibit "4" are copies of records of the Secretary of State of the State of Oregon which reflect that Freightliner, LLC, has its principal place of business located in Portland,

4

Oregon.

The subject vehicle in question is clearly subject to interstate commerce and has traveled in interstate commerce. The Plaintiff and Houston Freightliner expressly acknowledged and agreed that their relationship and business dealings and contracts involved interstate commerce and expressly agreed to submit all controversies, claims and matters of difference of any nature whatsoever to binding arbitration in Texas in accordance with the Federal Arbitration Act. See, Exhibit "1" to affidavit of Roger Poser.

In its filings herein Houston Freightliner, Inc., has stated that it stands ready, willing and able to file all claims, forms and filing fees pursuant to the terms and conditions of the arbitration agreement between the parties and executed by Lonnie Lewis and as required or mandated by the American Arbitration Association upon the Court's entry of a stay of proceedings and order compelling arbitration. See, affidavit of Roger Poser at ¶11.

The repair order executed by Plaintiff, Lonnie Lewis, also contains the following statement and disclaimer of warranty:

> **STATEMENT AND DISCLAIMER OF WARRANTY - THE FACTORY WARRANTY CONSTITUTES THE ONLY AND ALL OF THE WARRANTIES WITH RESPECT TO THE SALE OF PARTS AND SERVICE ON THE VEHICLE DESCRIBED ABOVE. THE SELLER HEREBY EXPRESSLY DISCLAIMS ALL WARRANTIES EITHER EXPRESS OR IMPLIED INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. SELLER NEITHER ASSUMES OR AUTHORIZES ANY OTHER PERSON TO ASSUME FOR IT ANY LIABILITY IN CONNECTION WITH THE SALE OF THIS ITEM/ITEMS.**
>
> * * *
>
> **TEXAS PROPERTY CODE AND U.C.C. NOTICE** - The undersigned is the personal or expressly authorized agent of

the person responsible to pay for the repairs to the vehicle described above and personally agrees to pay and understands that as provided by Section 70.01 et seq., Texas Property Code, possession of the vehicle may be retained until all repair charges have been paid in full and that if possession is relinquished in return for a check, money order, or a credit card transaction for which payment is stopped, has been dishonored because of insufficient funds, no funds or because the drawer or the maker of the order or the credit card holder has no account or the credit card account has been closed, the lien provided by the Texas Property Code continues and the vehicle is subject to repossession in accordance with Section 9.609 and Section 9.610, Texas Business and Commerce Code.

**HOUSTON FREIGHTLINER, INC. IS NOT RESPONSIBLE FOR LOSS OR DAMAGE TO, OR THEFT OF ANY VEHICLE (OR ANY PERSONAL PROPERTY IN OR ON THE VEHICLE) LEFT ON ITS PREMISES FOR REPAIR, STORAGE OR INSPECTION.**

**s/ Lonnie Lewis**
Signature of Person Responsible or Agent
Responsible for Payment

There was an express written disclaimer signed by Plaintiff, Lonnie Lewis, of all warranties either express or implied including any implied warranty of merchantability or fitness for a particular purpose.

This action is presently before the Court on Defendant's motion to dismiss (Doc. No. 4), alternative motion to transfer venue (Doc. No. 4), and alternative motion to stay proceedings and compel binding arbitration.  (Doc. No. 5).

**II.**

## PLAINTIFF'S COMPLAINT IS DUE TO BE DISMISSED

**A.**    **This Court Does Not Have Personal Jurisdiction Over Defendant Houston Freightliner, Inc.**

As stated above, Houston Freightliner, Inc. is a Delaware Corporation with its

6

principal and sole place of business in Houston, Texas. See, Affidavit of Roger S. Poser. It is undisputed that the repair order which is the subject of Plaintiff's claims was executed in the State of Texas, and it is undisputed that the repairs were performed in the State of Texas. See, affidavit of Roger Poser at ¶8.

The guarantees of due process protect a non-resident defendant from binding judgments in forums with which it has established no meaningful contacts, ties, or relations. International Shoe Co. v. Washington, 326 U.S. 310, 319 (1945). Before being subjected to the jurisdiction of a forum's courts, a non-resident corporate defendant must undertake acts which establish certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 294 (1980); Quill Corp. v. North Dakota by and through Heitkamp, 504 U.S. 298, 306-07 (1992); Asahi Metal Industry Co., Ltd. v. Superior Court, 480 U.S. 102, 113 (1987). That as such, it is essential that there be some act by which the defendant purposely avails itself of the privilege of conducting activities in the forum state, thus invoking the benefits and protections of its laws. Quill Corp, 504 U.S. at 306-07; Hanson v. Denckla, 357 U.S. 235, 253 (1958).

In order to establish that this Court has personal jurisdiction over Houston Freightliner, the Plaintiff must show either that the asserted causes of action arose out of Houston Freightliner's "purposeful contact" with the State of Alabama so as to confer "specific" jurisdiction, or that Houston Freightliner's contacts with the State of Alabama were systematic and continuous so as to allow for the exercise of "general" jurisdiction. See, Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985); Keeton v. Hustler Magazine, Inc., 465 U.S. 770 (1984). The Plaintiff's complaint fails to make either of these showings.

7

Houston Freightliner has had no contact with Alabama sufficient to confer personal jurisdiction over Houston Freightliner.

As previously stated, Defendant, Houston Freightliner, Inc., (incorrectly named in the complaint as Freightliner of Houston, Inc.), is a Delaware corporation with its principal and sole place of business located in Houston, Texas. See, Affidavit of Roger S. Poser attached as Exhibit "A" to Alternative Motion to Stay Proceedings (Doc. No. 5). Houston Freightliner is not incorporated in the State of Alabama. Houston Freightliner has never contracted in Alabama to supply services or goods in the State of Alabama. Houston Freightliner does not advertise its goods or services in the State of Alabama or engage in any other activity of any nature whatsoever in the State of Alabama. Houston Freightliner, Inc. does not own any real or personal property located in the State of Alabama. Houston Freightliner, Inc. is not licensed in, or authorized to do business in the State of Alabama. Houston Freightliner, Inc., does not solicit business or engage in any other persistent course of conduct or business in the State of Alabama. Houston Freightliner does not derive substantial revenue from goods used or consumed in the State of Alabama or from services rendered in the State of Alabama.

In J&J Marine v. Ha Van Le, 982 S.W. 2d 918 (Tex. App. 1998) a Texas appeals court was presented with facts "mirroring" those in this case. In J&J defendant J&J was an Alabama corporation with its sole place of business in Alabama. J&J entered a contract in Alabama for the construction of a vessel built in Alabama. After delivery of the boat to the Plaintiffs in Alabama, the owners moved the boat to Texas. The defendant was aware the plaintiffs were Texas residents and defendants had constructed other boats for Texas residents. The Court of Appeals of Texas found the facts supported neither "specific" or

8

"general" jurisdiction over the defendants.  See, id at 925.

It is undisputed in this case that Mr. Lewis contracted for the repairs in the State of Texas, and the repairs were performed in the State of Texas.  The fact that Mr. Lewis is an Alabama resident and/or drove the vehicle to Alabama following the repairs in the State of Texas does not permit Alabama courts to exercise personal jurisdiction over Houston Freightliner.  See, World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 298, 100 S. Ct. 559 (1980)(that customers may move automobiles from state of sale without evidence of manufacturer's efforts to directly or indirectly serve the forum is not sufficient to establish minimum contacts).  In view of the foregoing facts and circumstances, it is clear that Houston Freightliner has not committed any acts or conducted any activity in Alabama, purposeful or otherwise, sufficient for this Court to exercise personal jurisdiction. Consequently, Houston Freightliner respectfully requests this Court to grant its motion and enter an order dismissing Plaintiff's complaint.

## B.    Venue Should be Transferred and/or the Case Dismissed

Plaintiff originally filed this action in the Circuit Court of Montgomery County, Alabama.  This action was timely removed to this Honorable Court pursuant to 28 U.S.C. §1446(a), as the district and division in which such action is pending.  Contemporaneously with the filing of the notice of removal, Defendant filed a motion to dismiss and alternative motion to transfer venue (Doc. No. 4), as well as an alternative motion to stay proceedings and to compel binding arbitration (Doc. No. 5).

As was done in this case, a removable action is required to be removed from state court to the district court embracing the place where the action is pending pursuant to 28 U.S.C. §1441(a) and §1446(a).  In these circumstances the law is not entirely clear as to

9

what challenges to venue remain following removal.

The Eleventh Circuit has stated that once a case is properly removed to federal court, a defendant cannot move to dismiss on §1391 venue grounds. Hollis v. Florida State University, 259 F. 3d 1295 (11th Cir. 2001). Other courts have held that a party who removes an action from state court to federal court does not, in so doing, waive the defense of improper venue as to the underlying state court action. See, P.T. United Can Co., Ltd. v. Crown Cork & Seal Co., Inc., 138 F. 3d 65, 72 (2d Cir. 1998), citing, Freeman v. Bee Machine Co., 319 U.S. 448, 452, 63 S. Ct. 1146, 1148-49 (1943)(although federal jurisdiction in a removed action is original, not appellate, it proceeds as though commenced in federal court). In P.T. United, the Second Circuit also stated that the doctrine of *forum non conveniens* permits a court to dismiss a claim even if the court is a permissible venue with proper jurisdiction over the claim. P.T. United Can Co., Ltd. v. Crown Cork & Seal Co., Inc., 138 F. 3d 65, 73 (2d Cir. 1998), citing, Gulf Oil v. Gilbert, 330 U.S. 501, 507, 67 S. Ct. 839 (1947).

The Eleventh Circuit held in Hollis that §1441(a) establishes federal venue in the district where the state action is pending. See, Hollis v. Florida State University, 259 F. 3d 1295, 1300 (11th Cir. 2001). In Hollis, however, the Eleventh Circuit recognized that a defendant in a removed action who had no choice of the district to remove to due to the requirements of §1441(a) nonetheless has options if defendant believes the case can be better litigated and tried in another division or district. See, Id. In Hollis, the Eleventh Circuit stated that the only proper way for a removing defendant to assert a challenge to venue is to do so pursuant to 28 U.S.C. §1404(a). Id. The Eleventh Circuit in Hollis also recognized that a removed action can also be transferred pursuant to §1406(a) if personal

10

jurisdiction over the defendant cannot be exercised in the district to which the action is removed.    Houston Freightliner has asserted lack of personal jurisdiction and has requested a dismissal or, alternatively, a transfer of venue.

Based on the foregoing, this action should be dismissed for lack of personal jurisdiction or under the doctrine of *forum non conveniens*. Alternatively, venue should be transferred to the United States District Court for the Southern District of Texas, Houston Division. The Texas district court is the district court which has personal jurisdiction of Defendant and is the only court which would have been a proper venue if this action had been originally filed in federal court.

As this Court is aware venue in actions founded solely upon the diversity of citizenship is proper only in (1) a judicial district where any defendant resides, if all defendants reside in the same state, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought. See, 28 U.S.C. §1391(a). Pursuant to 28 U.S.C. §1391(c) a corporation, for purposes of venue, is deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced.

Defendant has already demonstrated that its principal and sole place of business is located in Houston, Texas. Houston Freightliner is not subject to personal jurisdiction in this district or state. Houston Freightliner is subject to personal jurisdiction in Houston, Texas which is also the place where the agreement was executed, the repairs performed and where all events or omissions giving rise to the alleged claims occurred. The affidavit

11

of Roger Poser also establishes that all witnesses to be called by Defendant reside in Texas and the agreement of the parties provides for arbitration in Texas. It is clear all relevant factors demonstrate that this action should, under these facts and in the interests of justice and for the convenience of the parties and witnesses, be transferred. Furthermore, Texas has a significant interest in having this dispute litigated in its courts and a Texas court might choose not to enforce an Alabama judgment if it found an Alabama court improperly asserted personal jurisdiction. See, J&J Marine, Inc. v. Ha Van Le, 982 S.W. 2d 918, 925 (Tex. App. 1998). Under the facts of this case the appropriate venue for this action is the United States District Court for the Southern District of Texas, Houston Division.

For the above reasons, this action should be dismissed. Alternatively, this Honorable Court should transfer venue of this action to the United States District Court for the Southern District of Texas, Houston Division with the determination regarding arbitration, a stay, and the non-jurisdictional grounds of Defendant's motion to dismiss preserved for ruling upon by said court. See, 28 U.S.C. §1404(a), §1406(a) and 28 U.S.C. §1391(a). As hereafter set forth, this Honorable Court, in the further alternative, should stay this action and require Plaintiff to submit his dispute and claims to binding arbitration pursuant to any and/or all applicable arbitration agreements between the parties. Defendant preserves its rights to assert and does assert Defendant's motion to compel arbitration and stay proceedings in any court which assumes jurisdiction of this action.

## C.    All Claims for Breach of Warranty are Due to be Dismissed

The repair order and contract between the parties contains a disclaimer of all express and implied warranties by Defendant. Alabama law, Section 7-2-316(2), Code of

12

Alabama, 1975 allows a seller to exclude implied warranties of merchantability and fitness by including in the contract a "conspicuous" written disclaimer of warranties. See, Morgan Building and Spas, Inc. v. Gillette, 762 So. 2d 366, 371 (Ala. Civ. App. 2000).[2]  A clause is conspicuous "when it is so written that a reasonable person against whom it is to operate ought to have noticed it." Section 7-1-201(10), Code of Alabama, 1975. See, Id. The language in a form contract is considered conspicuous when the print is larger or is a contrasting type or color than that contained in the rest of the document.  Whether a clause is conspicuous is a question to be determined by the trial court. Id. In this case, the disclaimer of express and implied warranties in the subject repair order and contract between the parties is conspicuous and the warranty disclaimer is, therefore, effective. Alabama courts have routinely enforced disclaimers of warranty under the similar circumstances. See, Fleming Farms v. Dixie Ag Supply, Inc., 631 So. 2d 922 (Ala. 1994); See also, Fincher v. Robinson Bros. Lincoln-Mercury, Inc., 583 So. 2d 256 (Ala. 1991); Bryant v. Cruises, Inc., 6 F. Supp. 3d 1314, 1322 (N.D. Ala. 1998)(all claims for breach of warranty dismissed based upon disclaimer). The Alabama Supreme Court has expressly upheld a warranty disclaimer provision where, as here, the disclaimer provision was printed in all capital letters. See, Money v. Willings Detroit Diesel, Inc., 551 So. 2d 926 (Ala. 1989). Texas courts have reached similar results. See, Rolls Royce Motor Cars, Inc. v. Houston Tractor Equipment, Inc., 1992 WL 5546 (Tex. App., January 16, 1992). Furthermore, Plaintiff has set forth no basis upon which the disclaimer is not to be applied.

---

[2] Alabama law has been cited because Plaintiff filed this action in Alabama.  As set forth below, a similar analysis and result would appear to be mandated under applicable Texas law.  Texas law would appear to apply as Alabama law applies the doctrine of *lex loci contractus* to contract claims.  See, National Union Fire Ins. Co. of Pittsburgh, Pa. v. Cavins, 2005 WL 1221832 (M.D. Ala. 2005)(a contract is governed by the laws of the state where made except where legally contracted with reference to the laws of another jurisdiction).

13

Count III of Plaintiff's complaint is, therefore, due to be dismissed.

## D.     Plaintiff's Fraud/Misrepresentation Claim is Due to be Dismissed

In Count IV of his complaint Plaintiff alleges "Defendant represented to the Plaintiff

that they would be responsible for the repairs to Plaintiff's vehicle." See, Complaint ¶ 23.

Plaintiff alleges that he relied on the representations but was later "forced to make his own

repairs". The bare allegations of Plaintiff's complaint appear to be an attempt to assert a

fraud claim arising out of an alleged failure to perform under a contract. Although it is

possible for a tort to arise out of a breach of duty, an ordinary breach of contract does not

give rise to a tort. See, Brown-Marx Associates, Ltd. v. Emigrant Sav. Bank, 703 F. 2d

1361, 1370 (11th Cir. 1983). Failure to perform a promise is not itself adequate evidence

of intent to support an action for fraud. Id.

In order to survive a motion to dismiss, Plaintiff's claims of fraud must satisfy the

requirements of Rule 9(b) of the Federal Rules of Civil Procedure. Rule 9(b) requires that

in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall

be stated with particularity. See, Brooks v. Blue Cross and Blue Shield of Florida, 116 F.

3d 1364, 1370 (11th Cir. 1997). Specifically, to satisfy Rule 9(b) the complaint should set

forth:

> "(1) precisely what statements were made and what
> documents or oral representations or what omissions were
> made; and (2) the time and place of each such statement and
> the person responsible for making (or, in the case of
> omissions, not making) same; and (3) the contents of such
> statements and the manner in which the misled the plaintiff;
> and (4) what the defendants 'obtained as a consequence of
> the fraud.'" Id. at 1371.

In this case Plaintiff alleges that misrepresentations were made, but no allegations

14

describe specifically when, where, by whom, or specifically what that misrepresentation was. Defendant's motion to dismiss is, therefore, due to be granted. See, Leonard v. Stewart-James Co., Inc., 742 F. Supp. 653, 659 (N.D. Ga. 1990). Furthermore, neither Alabama law or Texas law support a cause of action for fraud/misrepresentation under the facts of this case.[3] See, DeGochicoa v. Keystone Texas Property Holding Corp, 2002 WL 31272370 (Tex. App., Sep. 30, 2002)(summary judgment in favor of defendant affirmed as to plaintiff's claims for negligence, promissory fraud, fraud and breach of contract arising out of defendant's representation that defendant "would pay for all her injuries").   See, Mergens v. Dreyfoos, 166 F. 3d 1114, 1118 (11th Cir. 1999)(when negotiating or attempting to compromise an existing controversy over fraud and dishonesty, it is unreasonable to rely on representations made by the allegedly dishonest party). See also, Holton v. Blue Cross and Blue Shield of South Carolina, 56 F. Supp. 2d 1347, 1357 (M.D. Ala. 1999)(claims that counselor was not paid for counseling services failed to plead facts which would support a finding of reliance or inducement to act, and failed to state a fraud claim for which relief may be granted).

## E.     The Subject Transaction and Plaintiff's Claims Against Houston Freightliner are Referable to Arbitration, are Governed by the Federal Arbitration Act, and the Action is Due to be Dismissed

Plaintiff's complaint arises out of Plaintiff's request for and purchase of repairs on or about February 13, 2005, of his Freightliner vehicle, serial number: VL794813, at Defendant's sole and only place of business in Houston, Texas.  Plaintiff signed a repair

---

[3] It appears Texas law would also apply to Plaintiff's tort claims.  Plaintiff alleges negligent repair in Texas and it is undisputed the repairs were performed in Texas.  See also, Brown-Marx Associates, Ltd. v. Emigrant Sav. Bank, 703 F. 2d 1361, 1367 n. 5 (11th Cir. 1983)(law of principal place of performance governed both questions of performance and torts growing out of the contract).

15

order containing a voluntarily executed and binding mediation/arbitration agreement. In his complaint Plaintiff purports to allege claims for negligence, breach of contract, breach of warranty and fraud arising out of the February 13, 2005 repair of the vehicle by Defendant at its premises in Houston, Texas.

A party seeking to compel arbitration has the initial burden of proving the existence of a contract calling for arbitration and proving that the contract is a "contract evidencing a transaction involving commerce within the meaning of the Federal Arbitration Act" (FAA). Citizens Bank v. Alafabco, 539 U.S. 52, 123 S. Ct. 2037, 2038, 156 L. Ed. 2d 46 (2003); see also, Wolff Motor Company v. White, 869 So. 2d 1129, 1131 (Ala. 2003). After a motion to compel arbitration has been made and supported, the burden is on the nonmovant to present evidence that the arbitration agreement is not valid or does not apply to the dispute in question. See, Memberworks v. Yance, 899 So. 2d 940, 942 (Ala. 2004).

The United States Supreme Court has identified three broad categories of activity that Congress may regulate pursuant to its commerce power. U.S. v. Lopez, 514 U.S. 549, 558, 115 S. Ct. 1624 (1995). First, Congress may regulate the use of the channels of interstate commerce. Id. Second, Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons, or things in interstate commerce. Id. Finally, Congress' authority includes the power to regulate those activities having a substantial relation to interstate commerce, i.e., those activities that substantially affect interstate commerce. Id. at 558-59. See also, Wolff Motor Co. v. White, 869 So. 2d 1129, 1132 (Ala. 2003).

Recently, in Citizens Bank v. Alafabco, 539 U.S. 52, 123 S. Ct. 2037, 2041 (2003) the U.S. Supreme Court reversed an Alabama Supreme Court decision applying an

16

improperly cramped view of Congress' Commerce Clause power. See, 123 S. Ct. at p. 2041. In Citizens Bank the U.S. Supreme Court stated that the Federal Arbitration Act (FAA) is not limited in application to transactions actually "in commerce" and "may be exercised in individual cases without having any specific affect upon interstate commerce if in the aggregate the economic activity in question would represent a general practice ... subject to federal control." Citizens Bank v. Alafabco, 123 S. Ct. at p. 2040. Therefore, the applicable test is whether the transaction "involved commerce" sufficient to trigger application of the FAA. Memberworks v. Yance, 899 So. 2d 940, 944 (Ala. 2004). As set forth in further detail in the following sections, the transaction at issue in this case involves interstate commerce, the FAA applies to this transaction, and all of the Plaintiff's claims are subject to arbitration. Where, as here, all of the issues raised in the complaint must be submitted to arbitration, dismissal is appropriate. See, Alford v. Dean Witter Reynolds, 975 F. 2d 1161, 1164 (5th Cir. 1992); see also, Caley v. Gulfstream Aerospace Corp, 333 F. Supp. 2d 1367, 1379 (N.D. Ga. 2004).

## 1. The Transaction Involves Interstate Commerce

In Service Corporation International v. Folmar, 883 So. 2d 621, 628 (Ala. 2003), the Alabama Supreme Court stated that the impact of Citizens Bank, supra, is to reorient our understanding of what manner of interstate commerce "involvement" is required to bring a contract within the reach of the FAA. Id. at 628. The Court went on to state that "in a very real since, an argument that a transaction does not 'involve' commerce under the FAA is actually an argument that Congress does not have the constitutional power under the Commerce Clause to reach and regulate that type of transaction". Id. The Alabama Supreme Court in Service Corporation International stated that "it would be difficult indeed

17

to give an example of an economic or commercial activity that one could, with any confidence, declare beyond the reach of Congress' power under the Commerce Clause, and, by extension, under the FAA ... [,and] a trial Court evaluating a contract connected to some economic or commercial activity would rarely, if ever, refuse to compel arbitration on the ground that the transaction lacked 'involvement' in interstate commerce." Id. at 629.

In this case Houston Freightliner, Inc. has filed a supported motion to compel arbitration demonstrating a valid, enforceable and binding agreement to arbitrate; therefore, Plaintiff has the burden to demonstrate arbitration is not due to be ordered. In Citizens Bank, supra, the U.S. Supreme Court reversed the Alabama Supreme Court and held the FAA is not limited to transactions actually "in commerce", but may also "be exercised in individual cases, without having any specific affect upon interest commerce if in the aggregate the economic activity in question would represent a general practice ... subject to federal control. Citizens Bank v. Alafabco, 123 S. Ct. At p. 2040. Following Citizens Bank, the Alabama Supreme Court has expressly stated that "the automobile business in the aggregate involves interstate commerce." Wolff Motor Co. v. White, 869 So. 2d 1129, 1134 (Ala. 2003).

As a condition and as a part of the transaction and repair regarding the Plaintiff's Freightliner vehicle, Serial No.: VL794813, an arbitration agreement was executed by Lonnie Lewis. Attached to the affidavit of Roger Poser of Houston Freightliner is a copy of the arbitration agreement signed by Lonnie Lewis. See, Doc. No. 5. The arbitration agreement between Plaintiff and Defendant states that the parties recognize and acknowledge that their relationship and business dealings and contracts involve interstate commerce and further agree to submit all controversies, claims and matters of difference

18

of any nature whatsoever to non-binding mediation and binding arbitration in Texas in accordance with the Federal Arbitration Act (9 U.S.C. §§ 1-16) and pursuant to the American Arbitration Association's rules and regulations. The Mediation/Arbitration Agreement between the parties and contained in the repair order reads as follows:

> The undersigned parties recognize and acknowledge that their relationship and business dealings and contracts involve interstate commerce and hereby submit all controversies, claims and matters of difference of any nature whatsoever (which are or may be directly or indirectly related to this repair Agreement in any manner whatsoever) to non-binding mediation and binding arbitration in Texas in accordance with the Federal Arbitration Act (9 USC 8 §§ 1-16) and pursuant to the Commercial/Business rules and procedures for mediation and arbitration Association. This submission and agreement to mediate and arbitrate shall be specifically enforceable. The parties hereto agree to submit all controversies to a one day mediation as a condition precedent to any arbitration proceeding. Arbitration may, thereafter, proceed in the absence of any party if written notice (pursuant to the American Arbitration Association's rules and regulations) of the proceedings has been given to such party. The parties agree to abide by all awards rendered in such arbitration proceedings. Such awards shall be final and binding on all parties to the extent and in the manner provided by the Federal Arbitration Act. All such awards may be filed with the Clerk of District Court in Harris County, Texas, as a basis for judgement and the issuance of execution for collection and, at the election of the party making such filing, with the clerk of one or more other court, state or federal, having jurisdiction of the party against whom such an award is rendered or his property.

Houston Freightliner, Inc. has demonstrated that its business and the subject transaction "involved commerce" and triggered application of the Federal Arbitration Act (FAA). The subject transaction in fact "involved commerce" and the subject vehicle had, in fact, moved substantially in interstate commerce. In Wolff, supra, the Alabama Supreme Court expressly held that "[t]he FAA certainly reaches transactions involving vehicles that

19

have moved in interstate commerce" and that the automobile business in the aggregate involves interstate commerce. See, Wolff Motor Co., supra, 869 So. 2d at 1134. Based on the facts of this case, it is clear that the transaction, which contained the arbitration agreement signed by Lonnie Lewis, "involved commerce" and substantially affected interstate commerce and is, therefore, governed by the Federal Arbitration Act.

## 2.    The Transaction Involved An Instrumentality Of Interstate Commerce

The subject of this lawsuit is the repair of a commercial motor vehicle. In the present age, motor vehicles represent Americans' primary mode of transportation both within and among the States. U.S. v. Bishop, 66 F. 3d 569, 590 (3rd Cir. 1995), cert. denied 516 U.S. 1032, 116 S. Ct. 681 (1995). Commuters, salespeople, and haulers rely upon motor vehicles daily to maintain the flow of commerce. Id. Accordingly, given the importance of the automobile and its inherent mobility, it has been held that a motor vehicle is an instrumentality of interstate commerce. Id.

In U.S. v. Bishop, supra, the Third Circuit of Appeals was called upon to determine whether Congress exceeded its constitutional authority in enacting a federal law criminalizing "carjacking." Congress believed that it had the power to criminalize the carjacking of a motor vehicle that had been transported, shipped, or received in interstate or foreign commerce, and it consequently enacted 18 U.S.C. §2119 to do just that. Id. The defendants in Bishop, who had appealed their convictions under the federal carjacking statute, argued that Congress had exceeded its power under the Commerce Clause of the United States Constitution. Id.; U.S. Const. Art. I, § 8 cl. 3. The government argued that the statute passed constitutional muster under the second category identified in Lopez because Congress can regulate instrumentalities of interstate commerce, along with

20

persons and things in interstate commerce, and because motor vehicles are a quintessential instrumentality of modern interstate commerce. Bishop, 66 F. 3d at 588.

In reaching a decision, the Bishop court acknowledged that the United States Supreme Court had made clear that airplanes, railroads, highways and bridges constitute instrumentalities of interstate commerce which Congress can regulate under the Commerce Clause. Id. (citing U.S. v. Lopez, 514 U.S., 549, 557, 115 S. Ct. 1624 (1995)(airplanes); Shreveport Rate Cases, 234 U.S. 342, 34 S. Ct. 833 (1914) (railroads); Allstate Constr. Co. v. Durkin, 345 U.S. 13, 73 S. Ct. 565 (1953) (highways); Overstreet v. North Shore Corp., 318 U.S. 125, 63 S. Ct. 494 (1943) (intrastate bridge over navigable waterway). The court then compared motor vehicles to the already recognized instrumentalities of interstate commerce:

> "Instrumentalities differ from other objects that affect interstate commerce because they are used as a means of transporting goods and people across state lines. Trains and planes are inherently mobile; highways and bridges, though static, are critical to the movement of automobiles. **It would be anomalous, therefore, to recognize these categories of instrumentalities but to suggest that the similarly mobile automobile is not also an instrumentality of interstate commerce.**"

Bishop 66 F.3d at 588 (emphasis added).

Recently, in Wolff Motor Co. v. White, 869 So. 2d 1129 (Ala. 2003), the Alabama Supreme Court considered whether a motor vehicle is an instrumentality of commerce subject to Congress' Commerce Clause power. In Wolff Motor Co. the Alabama Supreme Court expressly held that motor vehicles are instrumentalities of interstate commerce stating:

> The automobile, if anything, is the paradigm of modern

21

interstate commercial activity in the United States. ... Cars are themselves instrumentalities of commerce. United States v. McCoy, 323 F. 3d 1114, 1129 (9th Cir. 2003) (quoting, United States v. Oliver, 60 F. 3d 547, 550 (9th Cir. 1995)). See also, United States v. Ballinger, 312 F. 3d 1264, 1269 (11th Cir. 2002) (instrumentalities of interstate commerce are those 'persons or things that move in interstate commerce, including all cars and trucks, ships, aircraft and anything else that travel across state lines as do interstate shipments'); United States v. Tanner, 301 F. 3d 541, 543 (7th Cir. 2002) (instrumentalities, persons or things in interstate commerce, include railroads, aircraft, and trucks.); United States v. McHenry, 97 F. 3d 125, 126 (6th Cir. 1996) (cars are themselves instrumentalities of commerce); United States v. Bishop, 66 F. 3d 569, 588-90 (3rd Cir. 1995) ([m]otor vehicles are the quintessential instrumentalities of modern interstate commerce. ... commuters, salespeople and haulers rely upon motor vehicles daily to maintain the flow of commerce ... .'). Id. at 1135.

The fact that the subject transaction related to a motor vehicle is, alone, a sufficient basis upon which to compel arbitration. The fact that a vehicle could also be used solely for intrastate purposes does not withdraw it from Congress' Commerce Clause power. Just as it is unnecessary to demonstrate a transaction actually "in commerce", it is unnecessary to demonstrate that an item was actually being used in interstate commerce for it to be an instrumentality thereof. Relying upon Southern Ry. Co. v. United States, 222 U.S. 20, 32 S. Ct. 2 (1911), in which the Supreme Court rejected the distinction between vehicles that are traveling in interstate commerce and vehicles, which though capable of interstate travel, are traveling intrastate when regulated, the Bishop court rejected the argument that Congress could only regulate motor vehicles as instrumentalities of interstate commerce when such vehicles were actually traveling in interstate commerce. Bishop, 66 F. 3d at 589. In Southern Ry. Co., the United States Supreme Court recognized that Congress had the power to regulate boxcars that traveled exclusively intrastate because of their inherent

22

mobility and connection to interstate commerce.  222 U.S. at 27.  Simply put, the United States Supreme Court has held that Congress' power to regulate instrumentalities is not a power to regulate vehicles only when they are actually being used in interstate commerce; instead, this power derives from the objects' general status as instrumentalities. Bishop, 66 F.3d at 589; see also U.S. v. Williams, 51 F.3d 1004 (11th Cir. 1995), cert. denied Williams v. U.S., 516 U.S. 900, 116 S. Ct. 258 (1995)(overruled on other grounds but reaching the same conclusion as the Third Circuit in regard to the Commerce Clause issue).

The arbitration agreement at issue in this case was executed in connection with the repair of a motor vehicle.  In fact, the vehicle is a commercial vehicle Plaintiff alleges he used in interstate commerce.  Because the very vehicle involved is an instrumentality of interstate commerce, the vehicle is within the Congress' regulatory power under the Commerce Clause.  See, Wolff Motor Co., supra, 869 So. 2d at 1135.  Accordingly, the Federal Arbitration Act applies and Plaintiff's claims are subject to arbitration.

### 3.    The Arbitration Agreement Specifically Includes the Claims Asserted by the Plaintiff

The arbitration agreement entered into by Lonnie Lewis and Houston Freightliner, Inc., clearly and expressly mandates that the parties submit **all** controversies and claims to binding arbitration. Lonnie Lewis signed the arbitration agreement, knew of its existence, and consented to the clear language indicating that all claims relating would be submitted to arbitration.

The arbitration agreement entered into by Lonnie Lewis and Houston Freightliner, Inc., which has been submitted to the Court and is set forth in this brief clearly and

expressly mandated that the parties are to submit all controversies and claims to binding

arbitration. When determining the scope of an arbitration provision, the trial court must

look to the factual allegations of the complaint and determine whether the claims alleged

therein touch and concern matters covered by the arbitration provisions. See Progressive

Cas. Ins. Co. v. C.A. Reaseguradora Nacional de Venezuela, 991 F. 2d 42, 45 (2nd Cir.

1993); Genesco, Inc. v. T. Kakiuchi & Co., Ltd., 815 F. 2d 840, 846 (2nd Cir. 1987).

However, "due regard must be given to the federal policy favoring arbitration, and

ambiguities as to the scope of the arbitration clause itself must be resolved in favor of

arbitration." Volt Information Sciences, inc. v. Board of Trustees of Leland Stanford Jr.

Univ., 489 U.S. 468, 475, 109 S. Ct. 1248 (1989). By its express language, the scope of

the arbitration agreement includes all disputes between Plaintiff and Houston Freightliner,

Inc. which involve the vehicle at issue.

In Ex parte Messer, 797 So.2d 1079, 1082-83 (Ala. 2001), the Alabama Supreme

Court recognized the following guidelines in determining the scope of an arbitration

agreement:

> "'When deciding whether the parties agreed to arbitrate a
> certain matter..., courts generally... should apply ordinary state-
> law principles that govern the formation of contracts.' First
> Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944, 115 S.
> Ct. 1920, 131 L.Ed.2d 985 (1995).   In applying general
> Alabama rules of contract interpretation to the language of an
> arbitration agreement subject to the FAA, this Court must, in
> accordance with the federal substantive law on arbitration,
> resolve any ambiguities as to the scope of the arbitration
> agreement in favor of arbitration. See Moses H. Cone Mem'l
> Hosp. V. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct.
> 927, 74 L.Ed.2d 765 (1983)....The FAA 'simply requires courts
> to enforce privately negotiated agreements to arbitrate, like
> other contracts, in accordance with their terms,' and 'parties
> are generally free to structure their arbitration agreements as

24

> they see fit.' Volt Information Sciences, Inc. v. Board of
> Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 478-
> 79, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989). Accordingly, 'as
> with any other contract, the parties' intentions control, but
> those intentions are generously construed as to issues of
> arbitrability.'"

797 So.2d at 1082.

In this case, the clear language of the arbitration agreement establishes that the parties intended to submit **"all controversies, claims, and matters of differences of any nature whatsoever."** The language reflecting this intention is not hidden, but is prevalent throughout the agreement. The claims asserted by Plaintiff are exactly the type claims addressed by the arbitration agreement signed by Plaintiff.

Furthermore, it is settled law that "the federal policy favoring arbitration is so strong that, as a matter of law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration...." Ameriquest Mortgage Co. v. Bentley, 851 So. 2d 458, 463 (Ala. 2002)(quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983)). All coverage doubts should be resolved in favor of coverage under the arbitration agreement. AT&T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 650, 106 S. Ct. 1415, 1419 (1986)(quoting United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83, 80 S. Ct. 1347, 1352-1353 (1960)). Examining the Plaintiff's claims and the express terms of the arbitration agreement signed by Lonnie Lewis under this standard, it is clear that the Plaintiff's claims are subject to arbitration. The clear language of the arbitration agreement reflects the intention of the parties to resolve their disputes outside of court, and they are bound by those intentions. As stated previously, because all of the issues raised in the complaint

must be submitted to arbitration, dismissal is the appropriate action by this Honorable Court rather than merely a stay of the proceedings. See, Alford v. Dean Witter Reynolds, 975 F. 2d 1161, 1164 (5th Cir. 1992); see also, Caley v. Gulfstream Aerospace Corp., 333 F. Supp. 2d 1367, 1379 (N.D. Ga. 2004). Alternatively, this Honorable Court should transfer venue of this action to the United States District Court for the Southern District of Texas, Houston Division with the determination regarding arbitration, a stay, and the non-jurisdictional grounds of Defendant's motion to dismiss preserved for ruling upon by said court. In addition and/or in the further alternative, this Honorable Court should stay this action and require Plaintiff to submit his dispute and claims to binding arbitration pursuant to any and/or all applicable arbitration agreements between the parties. Defendant preserves its rights to assert and does assert Defendant's motion to compel arbitration and stay proceedings in any court which assumes jurisdiction of this action.

## CONCLUSION

Based on the grounds set forth in Defendant Houston Freightliner's motion to dismiss or, alternative motion to transfer venue (Doc. No. 4), and alternative motion to stay proceedings and compel binding arbitration (Doc. No. 5), and the reasons set forth in this brief, this Honorable Court should dismiss Plaintiff's complaint and each count and cause thereof, separately and severally. Alternatively, this Honorable Court should transfer venue of this action to the United States District Court for the Southern District of Texas, Houston Division with the determination regarding arbitration, a stay, and the non-jurisdictional grounds of Defendant's motion to dismiss preserved for ruling upon by said court. In addition and/or in the further alternative, this Honorable Court should stay this action and require Plaintiff to submit his dispute and claims to binding arbitration pursuant to any

26

and/or all applicable arbitration agreements between the parties. Defendant preserves its rights to assert and does assert Defendant's motion to compel arbitration and stay proceedings in any court which assumes jurisdiction of this action.

Dated this the 26th day of August, 2005.

ROGER S. MORROW (MOR032)

JOEL H. PEARSON (PEA019)
Attorneys for Defendant Houston Freightliner, Inc., incorrectly named in the Complaint as Freightliner of Houston, Inc.

OF COUNSEL:

MORROW, ROMINE & PEARSON, P.C.
P. O. Box 4804
122 South Hull Street
Montgomery, AL 36103
Telephone:   (334) 262-7707
Facsimile:   (334) 262-7742

## CERTIFICATE OF SERVICE

I hereby certify that I have on this date mailed a true and correct copy of the foregoing to the following parties of record at their proper mailing addresses, by depositing a copy of the same in the United States Mail, First Class, postage prepaid and affixed thereto; this 26th day of August, 2005:

Honorable Todd E. Hughes
Vercelli & Associates, P.C.
1019 S. Perry Street
Montgomery, Alabama 36104-5049

Of Counsel

27